Name  Aashish Y. Desai (187394) Mower, Carreon & Desai, LLP

Address  Mower, Carreon & Desai, LLP, 8001 Irvine Center Drive

City, State, Zip  Irvine, CA 92618          Suite 1450

Phone  949.474.3004

Fax  949.474.9001

E-Mail  desai@mocalaw.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

Bill _____
Fees Pd _____
Frms Gvn _____
CAD _____
TDO _____
Ntc/Dkt Mld _____
FF Frms Gvn _____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JOHN DeHAAN, CHERI FREEDMAN, individually and
on behalf of all other persons similarly situated,

PLAINTIFF(S),

v.

MJM INVESTIGATIONS, INC., a North Carolina
Corporation; MICHAEL J. MALONE, et al.

DEFENDANT(S).

CASE NUMBER:

ED CV 05-868-RGK (Opx)

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that ___Cheri Freedman on behalf of herself and all others___ hereby appeals to
                                        *Name of Appellant*          similarly situated
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):

☐ Judgment (specify):

☐ Other (specify):

1. Granting Defendant's Motion to Decertify FLSA and UCL Class Action (10/6/06) - Exhibit A
2. Granting Defendant's Motion for Summary Judgment of Freedman's Claims (10/6/06) - Exhibit B
3. Denying Plaintiffs' Motion for Reconsideration of Decertification Ruling (11/16/06) - Exhibit C
4. Denying Plaintiffs' Motion for Reconsideration of Summary Judgment (11/16/06) - Exhibit D

DOCKETED ON CM
DEC 1 4 2006
BY _____ 173

Entered in this action on ___10/6/06 and 11/16/06___.

A copy of said judgment or order is attached hereto.

December 8, 2006
Date

Signature
☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the
attorneys for each party.  Also, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit
prompt compliance with the service requirements of FRAP 3(d).

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD, IN THIS ACTION, ON THIS DATE.
12/11/06

A-2 (04/06)          DATED: _____     NOTICE OF APPEAL

DEPUTY CLERK

367

PROOF OF SERVICE
C.C.P. §§ 1013A and 2015.5

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the county of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 8001 Irvine Center Drive, Suite 1450, Irvine, California 92618. On December 11, 2006, I served the foregoing document described as **NOTICE OF APPEAL** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**Counsel for Defendants, MJM INVESTIGATIONS, INC., and MICHAEL J. MALONE:**
SEYFARTH SHAW LLP
George Preonas, Esq. (SBN 58921)
Allan Ono, Esq. (SBN 130763)
Todd C. Hunt, Esq. (SBN 174449)
2029 Century Park East, Suite 3300
Los Angeles, CA 90067-3063
Tel: (310) 277-7200
Fax: (310) 201-5219

SHANAHAN LAW GROUP
Kieran Shanahan, Esq.
Brandon S. Neuman, Esq.
207 Fayetteville Street Mall
Raleigh, North Carolina 27601
Tel: (919) 856-9494
Fax: (919) 856-9499

**BY MAIL** – I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY E-MAIL OR ELECTRONIC TRANSMISSION** – Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address of defense counsel. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Darlyne De Mars

2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 05-868-RGK (OPx) | Date | October 6, 2006 |
|---|---|---|---|

| Title | *JOHN DEHAAN, et al. v. MJM INVESTIGATIONS, INC., et al.* |
|---|---|

---

Present: The Honorable  R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) DEFENDANT'S MOTION TO DECERTIFY PLAINTIFF'S CONDITIONALLY CERTIFIED FLSA AND UCL CLASS ACTIONS (DOCKET ENTRY 187)**

## I.  FACTUAL BACKGROUND

On September 15, 2005, named Plaintiffs John DeHaan ("DeHaan") and Cheri Freedman ("Freedman") (collectively "named Plaintiffs") filed a class action lawsuit against Defendant MJM Investigations, Inc. ("Defendant") and Michael J. Malone[1] for unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages on behalf of themselves and others similarly situated. Plaintiffs are suing for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 211(c), and 216(b) and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17208. Aashish Desai is the attorney representing the class.

On November 28, 2005, the Court granted Plaintiffs' Motion for Certification of a Collective Class Action for their FLSA claim. On June 1, 2006, the Court granted class certification for Plaintiffs' UCL claim. At the February 13, 2006 Scheduling Conference, the Court set a deadline of August 16, 2006 for motions. On August 16, 2006, Defendant filed the instant Motion to Decertify Plaintiffs' Conditionally Certified FLSA and UCL Class Actions, which is presently before the Court.

For the reasons stated below, the Court grants Defendant's Motion to Decertify Plaintiffs' Conditionally Certified FLSA and UCL Class Actions.

---

[1] On March 6, 2006, the Court dismissed Michael J. Malone as a defendant for lack of personal jurisdiction.

Exhibit A P3

## II.   JUDICIAL STANDARD

### A.   Collective Action Under the FLSA

The FLSA provides an employee with a private right of action against an employer for unpaid overtime wages. 29 U.S.C. §§ 201 *et seq.*; *see Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 481 (E.D. Cal. 2006) (citing 29 U.S.C. § 207). Section 216(b) of the FLSA authorizes an employee to bring a collective action against an employer on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). Section 216(b) also establishes an "opt-in" scheme whereby potential plaintiffs must notify the court by filing a written consent that they intend to be a party to the collective action in order to be bound by and benefit from it. *Id.* If an employee does not opt in, that employee may subsequently bring a private action. *EEOC v. Pan Am. Work Airways, Inc.*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990).

District courts must evaluate whether the proposed lead plaintiffs are "similarly situated" to the proposed class. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). In making that determination, the majority of courts have adopted a two-tier approach to be analyzed on an ad hoc basis. *Id.* In the first stage, the court applies a fairly lenient standard of "similarly situated." *Id.* Based on the submitted pleadings and affidavits, the court determines whether it should authorize notice to potential opt-in plaintiffs of the pendency of the action. *Id.* If the court finds in the affirmative, the court conditionally certifies the collective class and authorizes notice. *Id.*

Once discovery is near completion, the party opposing certification may move to decertify the class. *Id.* At that time, the court proceeds to the second stage analysis by applying a higher standard of "similarly situated." *Wynn v. NBC*, 234 F. Supp. 1067, 1082 (C.D. Cal. 2002); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.2d 1095, 1102 (10th Cir. 2001). The court makes a factual determination regarding the propriety and scope of the class by considering three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Pfohl v. Farmers Ins. Grp.*, 2004 WL 554834, *2 (C.D. Cal. 2004) (citing *Thiessen*, 267 F.2d at 1103). If based on the complete factual record, the court finds that the plaintiffs are not "similarly situated," the court may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Id.*

### B.   Class Action Under the UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL treats violations of any federal, state, or local law as unlawful business practices independently actionable under the UCL. *Bahramipour v. Citigroup Global Mkts, Inc.*, 2006 WL 449132, *2 (N.D. Cal. 2006). If a potential plaintiff chooses to be excluded from the UCL class action, that plaintiff must opt out of the class action. *Bahramipour*, 2006 WL 449132, *3 (citing *Sav-On Drug Stores, Inc., v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004) (holding that a UCL class can be certified as an opt-in class)).

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect right of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parking*, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure ("Rule") 23 governs class actions. A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Mego Fin. Corp. Sec. Litig. v. Nadler*, 213 F.3d. 454, 462 (9th Cir. 2000) (internal quotation omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Southwest*, 457 U.S. at 156.

If the district court finds that the action meets the prerequisites of Rule 23(a), the court must then consider whether the class is maintainable under Rule 23(b). A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## III. DISCUSSION

### A. Under the FLSA, Named Plaintiffs are Not "Similarly Situated" to the Putative Class

On November 28, 2005, the Court conditionally certified the FLSA class. The Court now proceeds to the second-stage analysis by applying a higher standard of "similarly situated." Defendant contends that based on this higher standard, named Plaintiffs are not similarly situated to each other or to the putative class. For the reasons stated below, the Court agrees, and Defendant's Motion to Decertify the FLSA class is granted.

#### 1. *Disparate Factual and Employment Settings of Individual Plaintiffs*

Courts have found that the first factor involves an assessment of the opt-in plaintiffs' job duties, geographic location, supervision, and salary. *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000). Defendant argues that disparities exist among Claims, SIU, and Surveillance Investigators in job duties, work environment, work schedules, and compensation package. Plaintiffs, however, contend that Defendant maintained a uniform employment policy and centralized human resources and payroll functions for all employees. Plaintiffs further allege that although the job titles differ, the job descriptions and functions, required knowledge and skills, and work conditions are similar. The Court finds Plaintiffs' contention unwarranted.

The Court recognizes that the FLSA does not require that Plaintiffs are "identically situated," *Moss*, 201 F.R.D. at 409. However, the record reveals that named Plaintiffs are not "similarly situated" to each other or to the putative class.

First, the system of payment differed between hourly and salaried Investigators. Although the parties dispute whether DeHaan is an exempt or non-exempt employee, the evidence in record shows that he was a salaried SIU Investigator while Freedman was an hourly non-exempt Claims Investigator. Indeed, exempt employees are not similarly situated to non-exempt employees. Unlike non-exempt employees, exempt employees would have to prove fundamental entitlement to overtime compensation. Defendant maintained a policy of compensating Claims Investigators based on the hours submitted by Investigators to its Extranet system.[2] That policy demonstrates that at the very least, Claims Investigators, like Freedman, are not similarly situated to SIU Investigators, like DeHaan.

---

[2]Defendant contends that in 2005, it paid 20.70% of its overall investigator payroll in overtime compensation. (See Def.'s Reply at 5).

Second, the duties for each individual Investigator also varies. Unlike Claims or Surveillance Investigators, of the 18 SIU Investigators Defendant employed nationwide, some worked in the field, while others, such as DeHaan, primarily work at home. Particularly, DeHaan reviewed files in the office and performed in-house client activity. To the contrary, Claims Investigators, like Freedman, conduct accident investigations, scene diagrams, interviews, and prepare reports of findings. Surveillance Investigators, on the other hand, obtained video footage in the field.[3] The very fact that the parties dispute the job responsibilities held by Investigators, specifically, named Plaintiffs, demonstrates the potential disparity among the class members.

Finally, Plaintiffs' general claim that Defendant has an overarching policy of preventing the submission of overtime hours by its Investigators is insufficient. Plaintiffs fail to provide substantial evidence that Defendant mandates all Investigators to comply with a single decision, policy, or plan. *Moss*, 201 F.R.D. at 409-410 (holding that "generally, allegations of an overarching policy are insufficient, and plaintiffs are required to produce substantial evidence of a single decision, policy, or plan). In support of their allegations, Plaintiffs contend that Defendant distributed uniform job descriptions and employee handbooks and required all employees to participate in training at a centralized location. However, Defendant asserts that DeHaan testified that he never received any employment training. (Def.'s Reply at 4). Also, contrary to Plaintiffs' allegations, upon the Court's closer reading, Defendant's job descriptions for SIU Investigators appeared to considerably vary from other Investigators, in general.[4] Among other things, SIU Investigators were responsible for the growth, performance, operational efficiency, and company policy compliance of various units.

2.    *Various Defenses Available to Defendant*

The second factor considers whether the defenses pertain to the plaintiffs as a whole or whether they pertain to each individual plaintiff. *Moss*, 201 F.R.D. at 410. "[T]he district court has the discretion to determine whether the potential defenses would make the class unmanageable." *Id.* Defendant argues that among others, the following defenses pertain to each individual Plaintiff, thus, making the class unmanageable: (1) administrative exemption; (2) waiver; and (3) equitable offset. The Court concurs.

Defendant offers the administrative exemption defense. Under the FLSA, the administrative exemption would require an analysis of whether the primary job duties of Investigators for each category was administrative. Defendant contends that SIU Investigators, like DeHaan, reviewed files in the office, performed in-house client activity, and were seldom in the field. (Def.'s Mot. at 4).[5] However, Plaintiffs claim that all Investigators are generally required to conduct background investigations. As such, the Court would have to examine each job category in order to determine whether the exemption applied.

---

[3] Although Plaintiffs' Complaint includes Surveillance Investigators, the Court notes that neither of the named Plaintiffs are Surveillance Investigators.

[4] Plaintiffs submitted Defendant's Job Descriptions. However, Plaintiffs failed to distinguish between Claims and Surveillance Investigators. The Job Descriptions only separated Investigators into sub-categories of Investigator, Master Investigator, Senior Investigator, Chief Investigator, SIU Investigator, and CI/SIU Investigator. (See Pls.' Opp'n Ex. A).

[5] Defendant contends that it only employed 18 SIU Investigators worldwide. (See Def's. Mot. at 6).

Exhibit A P 6

Moreover, Defendant asserts a waiver defense. Defendant claims that recently, it settled FLSA claims with the DOL pursuant to which many Plaintiffs released their overtime claims. (Def.'s Mot. at 17). As such, the Court would have to make individualized determinations as to which Plaintiffs were in fact bound by that DOL settlement.

Finally, Defendant contends that it is entitled to an equitable offset for all non-compensable amounts. (Def.'s Mot. at 15). Defendant alleges that under the FLSA, Plaintiffs are not entitled to certain payments, such as commute time.[6] Whether this right to offset applies to a Plaintiff is based on various factors including a plaintiff's geographic location, work schedule, and compensation plan.

Considering the size of the class, the above-stated determinations are so individualized that a collective action would be unmanageable. Therefore, this factor weighs against certification.

### 3. *Fairness and Procedural Considerations*

The third factor considers the primary objectives of § 216(b). Those objectives are: (1) "to lower costs to the plaintiffs through pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Moss*, 201 F.R.D. at 410 (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). The court must also examine whether "it can coherently manage the class in a manner that will not prejudice any party." *Id.*

Plaintiffs argue that without the ability to pool resources through a collective action, Plaintiffs would not have the financial capability to pursue their claims. Plaintiffs contend that decertification would require numerous courts nationwide to try identical cases. For the reasons stated below, the Court finds that fairness and procedural considerations weigh against class certification.

The record indicates that presently, there are 173 FLSA class members. The Court recognizes that Plaintiffs may reduce their litigation costs by pooling their resources. However, the Court finds that it cannot coherently manage individualized determinations pertaining to the various claims of the 173 class members without prejudicing a party. As addressed above, among the named Plaintiffs' job duties, work environments, and work schedules, potential disparities exist. (*See* discussion *infra* Part III.A.1.) Moreover, Defendant presents numerous individualized questions in relation to its proffered defenses. Therefore, the potential magnitude of individualized issues render a collective action an inefficient method for this proceeding.

Based on the complete factual record, the Court finds that named Plaintiffs are not "similarly situated" and Defendant's Motion to Decertify the FLSA class is granted.

---

[6]Defendant requests that the Court take judicial notice of the case, *James Stevens v. GCS Service Inc.*, SACV 04-1337 CJC (Ctx). A court may take judicial notice of a fact that is not subject to reasonable dispute. Fed. R. Evid. 201(b). Courts generally take judicial notice of court filings or pleadings. *See, e.g., Pac. Bell. Tel. Co. v. City of Hawthorne*, 188 F. Supp. 2d 1169, 1172 (C.D. Cal. 2001); *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987). Accordingly, the Court takes judicial notice of *James Stevens v. GCS Service Inc.*, SACV 04-1337 CJC (Ctx).

**B.**    **Under the UCL, Plaintiffs Have Not Satisfied Rule 23 Requirements For Class Certification**

To justify certification of a UCL class under Rule 23, Plaintiffs must satisfy both Rule 23(a) and (b). Fed. R. Civ. P. 23(a-b). "In evaluating whether Plaintiffs have met their burden, a court should accept the substantive allegations of the complaint as true." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E. D. Cal. 2006) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). If the Court subsequently discovers that Rule 23(a) and (b) are no longer satisfied, the court is authorized to alter or amend an order granting class certification, thereby decertifying the class. Fed. R. Civ. P. 23(c)(1)(A)-(C); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982). On June 1, 2006, the Court certified the UCL class. Presently, the Court finds that Plaintiffs no longer satisfy Rule 23 requirements for class certification. Therefore, the Court grants Defendant's Motion to Decertify the UCL class.

To certify a class action, Plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Mego*, 213 F.3d. at 462 (internal quotation omitted). As such, the Court proceeds to discuss each requirement.

        1.    *Numerosity*

The prerequisite of numerosity is met if "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). When considering numerosity, the specific facts of each case must be examined. *Gen. Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Courts also consider such factors as "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, . . . [and] the ability of claimants to institute individual suits." *Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993).

The record indicates that currently, there are 258 UCL class members. Although all the UCL class members were employed in California, the large number of class members makes joinder impracticable. As such, the Court finds that the requirement of "numerosity" is satisfied.

        2.    *Commonality*

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). This requirement can be satisfied either by a shared legal issue with divergent factual predicates or by a common core of salient facts with disparate legal remedies. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiffs all commonly claim that Defendant violated Cal. Bus. & Prof. Code §§ 17200-17208 by failing to pay overtime wages to the class members. However, Plaintiffs do not all assert that Defendant misclassified them as exempt employees. Moreover, Plaintiffs do not have a common core of salient facts. Some Plaintiffs were salaried employees while others were hourly. The class also consists of exempt and non-exempt employees. In addition, Plaintiffs' job duties, work environments, and work schedules appeared to vary considerably. Although the Court recognizes that Rule 23(a)(2) does not require the commonality of *all* questions of law and fact, resolution of these issues require individualized considerations. *See Romero*, 235 F.R.D. at 485. Therefore, the Court finds that the requirement of "commonality" is not satisfied.

### 3. *Typicality*

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Southwest*, 457 U.S. at 156.

The Court notes that named Plaintiffs possess similar interests and injuries as the class members. Like the other class members, named Plaintiffs allege that Defendant violated the UCL by failing to pay full overtime compensation. As a result, named Plaintiffs and the class members assert that they suffered injuries. Although that claim and injury appears typical of the class, Defendant offers several defenses that require individualized determinations. Particularly, Defendant's administrative exemption and waiver defenses only apply to specific Plaintiffs, such as DeHaan. Moreover, Defendant's offset defense requires that the Court individually evaluate Plaintiffs' geographic location, work schedules, and compensation plan. These individualized determinations do not support a finding that named Plaintiffs' claims or defenses are "typical" of the class.

### 4. *Adequacy of Representation*

Under Fed. R. Civ. P. 23(a)(4), adequacy of representation is met if (1) the attorney representing the class ("Class Counsel") is qualified and competent, and (2) the class representative is not disqualified by interests antagonistic to the remainder of the class. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

#### a. *Qualifications and Competency of Class Counsel*

Class Counsel must be experienced and competent. Class Counsel has a fiduciary duty, such as the duty of loyalty, to each member of the class. *In Re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 17-18 (2nd Cir. 1986).

Previously, in the Court's June 1, 2006 Order, the Court found that Plaintiffs' Class Counsel, Aashish Desai, has successfully litigated numerous class actions in both federal and state court. Mr. Desai has also authored over eleven articles in the past five years relating to California overtime class actions. In addition, Mr. Desai has spoken at numerous seminars on class action litigation. Presently, it does not appear that Mr. Desai's circumstances have changed. Therefore, the Court finds that Class Counsel is competent as an attorney to adequately represent the class.

#### b. *Adequacy of Class Representative*

The class representatives are fiduciaries of the class and therefore must have sufficient qualifications to provide "adequate" representation. "Adequate representation depends on . . . an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund*, 244 F.2d at 1162. Thus, the class representative's personal claim must not be inconsistent with the claims of other members of the class. *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).

Based upon a review of the evidence submitted, there does not appear to be shared interests between the named Plaintiffs and the proposed class members. As discussed above, the named Plaintiffs' claims are not similar to other class members' claims and their injuries are not similar as well. (*See* discussion *infra* Part III.A.1). As such, based on the record, the Court finds that the "adequacy of class representative" requirement is not satisfied.

The Court concludes that under Rule 23(a), Plaintiffs have satisfied "numerosity," but not "commonality," "typicality," and "adequacy of representation." Therefore, the Court finds that Plaintiffs have not met their Rule 23(a) burden. As such, the Court need not discuss whether Plaintiffs satisfied Rule 23(b). Pursuant to Rule 23(c)(1), the Court grants Defendant's Motion to Decertify the UCL class.

## IV.   **CONCLUSION**

Based on the foregoing, the Court **grants** Defendant's Motion to Decertify the FLSA and UCL class actions.

**IT IS SO ORDERED.**

Initials of Preparer _____ slw

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | SCANNED |
|---|---|---|---|
| Case No. | ED CV 05-868-RGK (OPx) | Date | October 6, 2006 |
| Title | JOHN DEHAAN, et al. v. MJM INVESTIGATIONS, INC., et al. | | |

Present: The Honorable  R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:               Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:**       **(IN CHAMBERS) PLAINTIFFS' MOTION FOR SUMMARY
ADJUDICATION (DOCKET ENTRY 178); DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE,
PARTIAL SUMMARY ADJUDICATION (DOCKET ENTRY 190)**

## I.    INTRODUCTION

On September 15, 2005, named Plaintiffs John DeHaan ("DeHaan") and Cheri Freedman
("Freedman") (collectively "Plaintiffs") filed a class action lawsuit against Defendants MJM
Investigations, Inc. ("MJM") and Michael J. Malone.[1] Plaintiffs alleged claims for unpaid overtime
compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages on
behalf of themselves, and others similarly situated. Plaintiffs are suing, as non-exempt employees, for
alleged violations of the Fair Labor Standards Act ("FLSA") pursuant to 29 U.S.C. §§ 207, 211(c), and
216(b) and California's Unfair Competition Law ("UCL") under Cal. Bus. & Prof. Code §§ 17200-
17208.

Plaintiffs now seek summary adjudication against MJM on three issues: (1) liquidated damages;
(2) MJM's alleged failure to keep proper records; and (3) MJM's liability for violating the FLSA. MJM
also made a cross motion for summary judgment on the grounds that DeHaan is exempt from the
overtime pay provisions of the FLSA, and that Freedman received overtime pay for all hours she worked
as reported on her time sheets to MJM. Both motions are currently before the Court. For the following
reasons, the Court denies in part, and grants in part, both Motions.

[1]On March 6, 2006, the Court granted Defendant Michael J. Malone's Motion to Dismiss for
Lack of Personal Jurisdiction.

Exhibit _B_ P _11_

## II. FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise stated[2]:

Defendant MJM is an investigations company that was founded in 1989 by Michael J. Malone, and specializes in the investigation and surveillance of insurance claims. (Compl. ¶ 5). MJM is licensed to do business in all fifty states and maintains a significant presence in California which also serves as its West Coast Service Center. (Compl. ¶ 5). MJM provides claims investigative services to its clients, which include insurance carriers, self-insured corporations, third-party administrators, and insurance defense law firms. (Compl. ¶ 5; Faggart Decl. ¶ 4; Desai Decl. ¶ 2).

As alleged in Plaintiffs' Complaint, the two named Plaintiffs were employed by MJM as investigators. (Compl. ¶ 4). Specifically, MJM contends that DeHaan is a salaried, exempt, Special Investigations Unit ("SIU") Investigator, whereas, Freedman is an hourly, non-exempt Claims Investigator. Plaintiffs argue that, despite the titles, both Plaintiffs are non-exempt "investigators" who are entitled to overtime compensation. (Pls.' Statement ¶¶ 2,4). Plaintiffs bring this suit against MJM on behalf of salaried and hourly employees who were employed by MJM as "investigators."[3] Plaintiffs claim that they and the potential class members regularly worked in excess of sixty hours per week and/or eight hours per day, but received no or incomplete overtime compensation for the excess hours worked. (Compl. ¶ 4).

## III. JUDICIAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon such a showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R. Civ. P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. See Celotex Corp., 477 U.S. at 326.

To defeat a summary judgment, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. Nat'l Union Fire Ins. Co v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. See Celotex Corp., 477 U.S. at 324.

---

[2] These facts are taken from Plaintiffs' Complaint, in addition to Defendant's Statement of Uncontested Facts and Conclusions of Law in Support of Its Motion for Summary Judgment ("Defs.' Facts") and Plaintiffs' Statement of Genuine Issues ("Pls.' Statement").

[3] Plaintiffs allege that Defendants offer services in such areas as Surveillance Investigations, Claims Investigations, Special Investigations, Fraud Prosecution, Training, Consulting, and Insurance Fraud Compliance Unit. (Compl. ¶ 12). Plaintiffs claim that regardless of title, all investigators perform the same primary function of investigating questionable claims and lawsuits. (Compl. ¶ 12).

Exhibit __B__ P __12__

IV.   **DISCUSSION**

A.   **Administrative Exemption Under The FLSA**

MJM claims that DeHaan, as a salaried SIU Investigator, is exempt from the overtime provisions under the FLSA administrative employee exemption. Thus, as a matter of law, summary judgment should be granted. In response, DeHaan argues that regardless of title, all investigators employed by MJM are non-exempt employees entitled to overtime compensation because they all perform essentially the same primary function of investigating questionable insurance claims. Therefore, at issue in this case is whether MJM has violated the overtime pay provisions of the FLSA, and more specifically, whether DeHaan's actual job duties falls within the administrative exemption. For the following reasons, MJM's motion for summary judgment as to this claim is denied.

As a preliminary matter, in order to assess the materiality of the facts in this case, and of those, which are in dispute, the Court must look to the regulations defining the administrative exemption. DeHaan relies on 29 U.S.C. § 207(a), which provides for pay at one and one-half times the employee's regular pay rate for each hour that an employee works in excess of the statutory 40 hour workweek. Similarly, MJM relies on the administrative exemption from the overtime provision that Congress authorized the Secretary of Labor to "define and delimit" by regulation. 29 U.S.C. § 213(a)(1); *Fanelli v. United States Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944) (upholding the delegation of authority to the Secretary of Labor with the task of developing the FLSA exemptions).

To prevail on its administrative exemption claim, MJM must establish that DeHaan meets each of the following three requirements: (1) DeHaan was paid a salary of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a). The first requirement is generally referred to as the "salary test" while the last two requirements are referred to as the "duties test." *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995). The Court addresses each requirement in turn. For the following reasons, the Court finds that MJM fails to meet its burden.

1.   *The Salary Test*

Based on a review of the record, the Court finds no genuine dispute as to the first requirement. It is undisputed that throughout DeHaan's employment, he was paid a weekly salary that exceeded $455 per week. (Pls.' Statement ¶ 5; Faggart Decl. ¶ 3).

2.   *The Duties Test*

Under the second and third requirements, the job-related activities of the employees and their primary duties become material facts. Here, MJM must prove that SIU Investigators primarily perform office or non-manual work directly related to management policies or general business operations of MJM, and in so doing, exercise discretion and independent judgment.[4] Under the duties test, the Court

---

[4]The Secretary of Labor has defined the phrase "directly related to the management" as work "directly related to assisting with the running or servicing of the business," as compared to, for instance, "to working on a manufacturing production line or selling a product in a retail or service establishment." *See* 29 C.F.R. § 541.201(a). However, work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . insurance." 29 C.F.R. §

Exhibit _B_ P _13_

finds that genuine issues of material fact remain with respect to the duties of SIU Investigators.

DeHaan's submission of the Department of Labor ("DOL") Opinion Letter of August 19, 2005 ("Opinion Letter") offers very little insight into the primary duties of an SIU Investigator, let alone, any "investigator" at MJM. (*See* Pls.' Statement, Ex. A). Throughout DeHaan's Opposition, his counsel repeats the mantra that the DOL's Opinion Letter concluded that "investigators" are not administrative employees. However, the Court's closer reading of the Opinion Letter reveals that the letter deals with "background investigators" with a different employer, unrelated to MJM, who performed entirely different duties. The DOL's analysis is premised "exclusively on the facts and circumstances described in [DeHaan's] request and is given on the basis of [DeHaan's] representation" concerning the "applicability of the administrative exemption . . . to *background investigators*." (Pls.' Statement, Ex. A at 18) (emphasis added).

In short, the Opinion Letter, for which DeHaan place great evidentiary emphasis, is irrelevant because nowhere in the Complaint, or current pleadings, affidavits, declarations or otherwise, are there any specific evidence to adequately show that DeHaan, or others similarly situated, were employed as "background investigators" for the Defense Security Service.

The declarations submitted by both parties further reflect the same factual dispute with respect to the activities of SIU Investigators. MJM asserts that SIU investigators "work at a desk, reviewing claim files and investigative reports" to "evaluate the claim . . . and form a judgment whether the claim may be fraudulent," as opposed to DeHaan's contention that the investigators are merely "fact-finders." (Faggart Decl. ¶¶ 4-9; Desai Decl. Ex. A). Undoubtedly, based on these contradictions and generalities, there is a factual dispute with respect to the nature of DeHaan's job and the duties he performed.

Even if the Court accepts the DOL's finding that "Investigators do not qualify as bona fide administrative employees" it does not conclusively show that all employees with such title are non-exempt employees entitled to overtime pay. An employee's job title is not determinative of his or her exempt status as administrative employee from overtime pay requirements. 29 C.F.R. § 541.2; *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 60 (D. Conn. 1997). Thus, a determination of the exempt or non-exempt status of an employee must be made on an individual basis that takes into account all of the pertinent facts relating to the actual work performed by the employee. *Id.* "A job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2.

Accordingly, facts pertaining to the primary duties of the SIU Investigators are sufficiently muddled. Summary judgment, therefore, is not warranted on the issue of the applicability of the administrative exemption to the SIU Investigators.

## B.   Freedman's Claim for Uncompensated Overtime Hours Is Unwarranted

Freedman asserts that, as a non-exempt investigator, she was not compensated for at least 18 hours of overtime work during each week in which she was employed by MJM. ( Freedman Decl. ¶ 9). MJM, however, argues that Freedman was paid for all of her overtime hours for which she reported on

---

541.201(b). Moreover, an employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. 29 C.F.R. § 541.201(c). As such, employees acting as advisers or consultants to their employer's clients or customers may be exempt. *Id.*

Exhibit B P 14

her time sheets to MJM. As such, the only remaining issue in the present case is whether MJM had knowledge of Freedman's uncompensated overtime work.

To be entitled to overtime compensation under the FLSA, the plaintiff's activities must be performed with the employer's knowledge. 29 C.F.R. § 785.12. In reviewing the extent of the employer's knowledge of overtime hours being worked, for purposes of FLSA liability, the court need only inquire whether circumstances were such that the employer either (1) had knowledge of the overtime hours being worked; or (2) had an opportunity through reasonable diligence to acquire knowledge. *Reich v. Dep't of Conservation and Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Here, MJM contends that it had no actual or constructive knowledge of Freedman's uncompensated overtime. The Court agrees.

"An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981). The court in *Forrester*, however, went on to state that if the "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Id.* In *Forrester*, the appellate court affirmed the district court's grant of summary judgment for the employer because the employee turned in time sheets which did not include the overtime hours. The employee also did not demonstrate that the employer should have known that the employee worked more hours than those claimed on his time sheets. *Id; see also Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) (holding that the employee was not entitled to unpaid overtime for the hours he did not claim on his time sheets).

Like *Forrester*, in the instant case, the undisputed facts show that Freedman was required to submit her work time on a daily basis through MJM's Extranet system and to provide in detail, among other things, the time she spent investigating, writing reports, and traveling from location to location. No evidence in the record showed that MJM employers knew that Freedman had been working uncompensated overtime hours. In fact, Freedman did not mention any unpaid overtime work to any MJM official and has produced no evidence that MJM inquired into the accuracy of the time sheets submitted by Freedman. Under these circumstances, the Court finds that no genuine issue exists as to the material fact that MJM had knowledge of Freedman's claimed uncompensated overtime hours.

Moreover, Freedman fails to identify, in the record, any hour of work she was not paid. Instead, Freedman makes the bald assertion of fact in her declaration that she is owed money for 18 hours of overtime for each week she was employed for which she was not compensated. (Freedman Decl. ¶ 9). She admits, however, that she never reported those hours on her time sheets because MJM promulgated polices which prevented the submission of the overtime hours. The Court finds Freedman's contention unpersuasive. The only relevant evidence in the record to support her assertion that she worked the alleged overtime hours is her declaration, which is directly contradicted by her self-submitted time sheets. Under *White v. Washington Gas,* 2005 WL 544733, at *5 (D. Md. Mar. 4, 2005), the court held that summary judgment for the employer was proper where "[t]he only evidence in the record to support [plaintiff's] contention that he worked the claimed overtime hours is his affidavit, which is directly contradicted by his signed timesheets." As such, like the import decision in *White,* the Court finds that Freedman's declaration amounts only to a 'scintilla of evidence,' so summary judgment is appropriate." *Id; see also Bill Call Ford, Inc. v. Ford Motor Co.,* 830 F. Supp. 1045, 1950 (N.D. Ohio 1993) (holding that the plaintiff's affidavit contradicting his own correspondence, is only a scintilla of proof on this issue, rendering summary judgment appropriate).

Exhibit _B_ P _15_

Without question, MJM relied upon the time sheets submitted by Freedman in paying her, and in its attempt to comply with the provisions of the FLSA. Freedman is not entitled now to renounce the accuracy of the time sheets to the legal detriment of MJM.

For these reasons, MJM's motion for summary judgment as to Freedman's claim is granted.

## C.  Plaintiffs' Motion for Summary Adjudication

The Court has considered Plaintiffs' Motion for Summary Adjudication on the issues of liquidated damages, FLSA's record keeping requirement, and FLSA liability. In light of the Court's above finding that there are genuine issues of material fact as to liability under the FLSA on MJM's Motion for Summary Judgment, the Court need not address the validity of these issues. Therefore, Plaintiffs DeHaan and Freeman's motion for summary adjudication, is denied.

## V.  EVIDENTIARY OBJECTIONS

To the extent the Court relied on the parties' evidence, objections to that evidence are overruled.

## VI.  CONCLUSION

In light of the foregoing, Defendant's Motion for Summary Judgment is **denied** with respect to Plaintiff DeHaan, and **granted** with respect to Freedman's claims. Moreover, Plaintiffs' Motion for Summary Adjudication is **denied**.

**IT IS SO ORDERED.**

Initials of Preparer                          s/w

Exhibit B P 16

DOCKETED ON

NOV 17 2006

BY _____ 021

ND, CLOSED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 05-868-RGK (OPx) | Date | November 16, 2006 |
|----------|------------------------|------|-------------------|

| Title | *JOHN DEHAAN, CHERI FREEDMAN v. MJM INVESTIGATIONS, INC. &* |
|       | *MICHAEL MALONE* |

Present: The Honorable   R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|--------------------|--------------|-----|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

Not Present                                  Not Present

**Proceedings:**       **(IN CHAMBERS) PLAINTIFFS' MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER DECERTIFYING THE FLSA AND UCL
CLASS**

### I.   FACTUAL BACKGROUND

On September 15, 2005, named Plaintiffs John DeHaan ("DeHaan") and Cheri Freedman
("Freedman") (collectively "Plaintiffs") filed a class action lawsuit against Defendants MJM
Investigations, Inc. ("MJM") and Michael J. Malone.[1]  Plaintiffs alleged claims for unpaid overtime
compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages on
behalf of themselves and others similarly situated.  Plaintiffs sued as non-exempt employees for alleged
violations of the Fair Labor Standards Act ("FLSA") pursuant to 29 U.S.C. §§ 207, 211(c), and 216(b)
and California's Unfair Competition Law ("UCL") under Cal. Bus. & Prof. Code §§ 17200-17208.

On November 28, 2005, the Court granted Plaintiffs' Motion for Certification of a Collective
Class Action for their FLSA claim.  On June 1, 2006, the Court granted class certification for Plaintiffs'
UCL claim.  On August 16, 2006, MJM filed a Motion to Decertify Plaintiffs' Conditionally Certified
FLSA and UCL Class Actions.  On October 10, 2006, the Court entered an order decertifying both
classes.

On October 11, 2006, Plaintiffs filed the instant Motion for Reconsideration of the Court's Order
Decertifying the FLSA and UCL Class.  For the reasons stated below, the Court denies Plaintiffs'
Motion for Reconsideration of the Court's Order Decertifying the FLSA and UCL Class.

---

[1]On March 6, 2006, the Court granted Defendant Michael J. Malone's Motion to Dismiss for
Lack of Personal Jurisdiction.

Exhibit C P 17

## II.   JUDICIAL STANDARD

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *United States v. LoRusso*, 695 F.2d 45, 53 (9th Cir. 1982); °see also Fed. R. Civ. P. 54(b).[2] "Once an order is entered, a court may set aside or change the order . . . pursuant to a motion, for reconsideration" under the local rules.[3] *Mayo v. Dean Witter Reynolds, Inc.*, 259 F. Supp. 2d 1097, 1103 (N.D. Cal. 2003).

Local Rule 7-18 for the Central District of California provides that a motion for reconsideration may only be made on the following grounds:
> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

C.D. Cal. Loc. R. 7-18.

## III.   DISCUSSION

Plaintiffs seek the Court's reconsideration under Local Rule 7-18 (b) and (c) which states the following grounds: (b) a change of law occurring after the time the Court rendered its decision to decertify the class; and (c) a manifest showing that the Court failed to consider material facts presented to the Court before the Court rendered its decision. The Court addresses each of Plaintiff's contentions in turn.

### A.   Plaintiffs Do Not Present Any Change In Law Since the Court Rendered Its Decision to Decertify the FLSA and UCL Classes

Plaintiffs assert that the Court abused its discretion when it denied class certification. Plaintiffs rely upon *Aguiar v. Cintas Corp.*, 2006 WL 2744773 (Cal. Ct. App. 2006), for the proposition that the Court was obliged to utilize sub-classes rather than to de. Putting aside for the moment that Plaintiffs

---

[2]Federal Rule of Civil Procedure ("Rule") 54(b) states that "[i]n the absence of ["entry of judgment as to one or more but fewer than all of the claims or parties"], any order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b).

[3]An order to set aside or change the order can be brought under Rule 59, Rule 60, or a motion for reconsideration under the local rules. *Mayo,* 259 F. Supp. 2d at 1103. However, Rule 59 and Rule 60 only apply when the court has entered a final judgment or order. Under Rule 54(a), a judgment is a "decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). An order decertifying a class is not immediately appealable and thus, not a final order. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 470, 477 (1978) (finding that orders relating to class certification are not independently appealable under 28 U.S.C. § 1291 which allows appeals for final decisions, and not interlocutory orders). In the present case, the Court will thus apply Local Rule 7-18 to Plaintiffs' motion for reconsideration.

Exhibit __C__ P __18__

have proffered a California Court of Appeal decision and erroneously assumed that the Court must follow that *state court* ruling, the Court reiterates that is has already considered the use of sub-classes and has found that sub-classes do not rectify the disparities existing among Plaintiffs. Plaintiffs do not cite, nor is the Court aware of, any case in the Ninth Circuit specifically mandating the use of sub-classes before a Court may decertify a class. Despite Plaintiffs' assertions, Rule 23(c)(4) does not mandate the use of sub-classes. The language of Rule 23(c)(4) is precatory, not mandatory. It specifically states that "[w]hen appropriate, . . . a class *may* be divided into subclasses and each subclass treated as a class." Fed. R. Civ. P. 23(c)(4); *see also American Timber & Trading Co.,* 690 F.2d 781, 786-787 (9th Cir. 1982) ( finding that it was within the district court's broad power to create sub-classes and that "Rule 23(d) confirms the district court's *broad discretion* to manage a complex class action") (emphasis added).

Plaintiff have failed to present any change in law since the Court decertified the FLSA and UCL classes. As such, reconsideration by the Court is unwarranted.

### B. Plaintiffs Do Not Make A Manifest Showing of the Court's Failure to Consider

### Material Facts Presented to the Court Before Its Decision

Plaintiffs argue that the Court failed to consider material facts presented by Plaintiffs before the Court decertified the FLSA and UCL class. Plaintiffs assert that in failing to create sub-classes, the Court has misapplied the legal standards under both the FLSA and the UCL. Plaintiffs have merely reiterated the arguments stated in their Opposition to MJM's Motion for Decertification. Contrary to Plaintiffs' claims, before deciding to decertify the class, the Court carefully viewed the record *as a whole.* The Court found that the FLSA and UCL classes did not meet the respective requisite standards to maintain certification.

The Court finds that Plaintiffs have failed to satisfy their burden under Local Rule 7-18. The Court declines reconsider its Order decertifying the FLSA and UCL class.

## IV. CONCLUSION

In light of the foregoing, the Court **denies** Plaintiffs' Motion for Reconsideration of the Court's Order Decertifying the FLSA and UCL Class.

**IT IS SO ORDERED.**

Initials of Preparer _____ sjw

Exhibit __C__ P __19__

SEND, CLOSED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | ED CV 05-868-RGK (OPx) | | Date | November 16, 2006 |
|---|---|---|---|---|

| Title | *JOHN DEHAAN, CHERI FREEDMAN v. MJM INVESTIGATIONS, INC. & MICHAEL MALONE* |
|---|---|

Present: The Honorable   R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF CHERI FREEDMAN (DE 340)**

## I.   FACTUAL BACKGROUND

On September 15, 2005, named Plaintiffs John DeHaan ("DeHaan") and Cheri Freedman ("Freedman") (collectively "Plaintiffs") filed a class action lawsuit against Defendants MJM Investigations, Inc. ("MJM") and Michael J. Malone.[1]  Plaintiffs alleged claims for unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages on behalf of themselves and others similarly situated.  Plaintiffs sued as non-exempt employees for alleged violations of the Fair Labor Standards Act ("FLSA") pursuant to 29 U.S.C. §§ 207, 211(c), and 216(b) and California's Unfair Competition Law ("UCL") under Cal. Bus. & Prof. Code §§ 17200-17208.

On October 11, 2006, the Court entered summary judgment against Freedman.  On October 12, 2006, Plaintiffs filed a Motion for Reconsideration of the Court's Order Granting Summary Judgment Against Plaintiff Cheri Freedman, which is presently before the Court.

## II.   DISCUSSION

Plaintiffs assert that as applied to Freedman, the Court erred in its interpretation of *Forrester v. Roth's I.G.A. Foodliner*, 646 F.2d 413 (9th Cir. 1981), and erroneously granted summary judgment. Upon review of Plaintiffs' arguments, the Court finds that is interpretation of applicable case law and

---

[1]On March 6, 2006, the Court granted Defendant Michael J. Malone's Motion to Dismiss for Lack of Personal Jurisdiction.

Exhibit D P 20

findings in this matter, as explained in its order granting summary judgment, were not clearly erroneous. As such, Plaintiffs' motion is denied.

**IT IS SO ORDERED**.

Initials of Preparer                    slw

Exhibit ___D___ p 2 1